UNITED STATES of America,
Plaintiff–Appellee,

v.

Jacinto RIVERA, Defendant–Appellant.

No. 89–2973.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1990.

Decided July 5, 1990.

320

David E. Risley, Office of U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Robert Ramos, Hill & Ramos, El Paso, Tex., for defendant-appellant.

Before WOOD, Jr., and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Jacinto Rivera was driving erratically on an Illinois highway. The speed limit was 65, yet he drove at 50 miles per hour, then sped to 65, then slowed again to 50. He also had a champagne glass (in which there was a gold cross) on his dashboard, a glass that could conceivably obstruct his view out of the front windshield. An Illinois state trooper pulled Rivera over, ostensibly for two purposes: to investigate the cause of his erratic driving, *e.g.*, alcohol or fatigue, and to cite him for having a material obstruction on his dashboard in violation of section 12–503(c) of the Illinois Vehicle Code, ILL.REV.STAT. ch. 95½, ¶ 12–503(c) (1982). After he pulled Rivera over, the trooper noted signs of alcohol use. He also noted some oddities, such as that Rivera lied to him about the relational status between Rivera and a passenger in the car. The trooper noted further that the passenger was not wearing her safety belt, as required by law. He asked Rivera why he was driving erratically, and Rivera told him that his carburetor was malfunctioning. The trooper took from the two a driver's license (Rivera) and an identity card (passenger). He perused the i.d.'s and asked the couple some more questions. He then asked Rivera to accompany him back to the squad car while he issued a warning for the obstruction.

The two men sat inside the squad car. The trooper wrote the warning and gave it to Rivera. He handed Rivera the license, the identification, and the warning, and told him "that was it." As Rivera reached for the door handle, the trooper told him that the Illinois State Police were conducting a drug interdiction program, and asked him if he was carrying any drugs, weapons, or illegal contraband. Rivera laughed and said "No." The trooper asked for permission to look inside Rivera's car. Rivera gave him permission, saying "Sure, you want to look in the trunk too?"

The trooper asked Rivera and his companion to stand by the right front fender of the car. They did so. He then began to search the inside of the car. In the midst of the search Rivera attempted to walk

behind the trooper. The trooper told Rivera to go back to the right front tire. Rivera, without complaint, did so. The trooper then lifted the back seat and found cocaine.

Rivera was prosecuted for violating 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute, and for violating 18 U.S.C. § 1952, interstate transportation of cocaine in aid of a drug enterprise. He made a motion to suppress the cocaine as the fruit of an unconstitutional seizure and search. The motion was denied. He was convicted at trial, and is presently incarcerated. He has appealed from the district court's denial of his motion to suppress.

■ Rivera raises three issues. The first is whether the cocaine found in his car should have been suppressed as evidence because the seizure of his car on traffic offense grounds was a "pretext" to search his car for drugs. It is an oft-stated axiom of fourth amendment jurisprudence that "an arrest may not be used as a mere pretext to avoid the warrant requirement of the fourth amendment." *United States v. D'Antoni,* 856 F.2d 975, 979 (7th Cir. 1988). But this oft-stated axiom does not cover much ground: in this Circuit the "pretext" test for unreasonable searches is extremely narrow. The test is an objective one. *United States v. McCarty,* 862 F.2d 143, 148 (7th Cir.1988). An officer's subjective intent is irrelevant. *Id.* Under this objective test, a search incident to an arrest is legal so long as the arresting officer possesses sufficient information to give him probable cause to make an arrest. Likewise, an otherwise proper search incident to a *Terry* stop, *see generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is legal so long as the investigating officer possesses sufficient information to give him reasonable suspicion to make an investigatory stop. "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, a [seizure and search incident thereto] is constitutional." *United States v. Trigg,* 878 F.2d 1037, 1042 (7th Cir.1989); *D'Antoni,* 856 F.2d at 979. We conclude

that the stop of Rivera's car on traffic offense grounds was not "pretextual," and, therefore, that the stop and resulting search pass constitutional muster.

■ Absent evidence of a "gross abuse of authority," in determining "pretext" a court must determine if a reasonable officer under the circumstances known to the detaining officer legally could have made the stop or arrest that was made. *See Trigg,* 878 F.2d at 1041; *id.,* at 1042–43 (Ripple, J., concurring). *But cf. D'Antoni,* 856 F.2d at 979 (citing Fifth Circuit test using "would" instead of "could"). The court must determine objectively (1) whether, under the circumstances known to the detaining officer probable cause or, for *Terry* stops, reasonable suspicion that the defendant had committed or was committing a crime existed, and (2) whether the detaining officer could under state or municipal law effect a custodial arrest or stop for the particular offense. *Trigg,* 878 F.2d at 1041. The court below made these determinations. It found that Rivera had a material obstruction on the dashboard of the car he was driving in violation of Illinois Vehicle Code section 12–503(c) and that the state trooper was aware of the violation. And it found that Rivera was driving erratically and that the state trooper was aware of this also. These findings will not be overturned unless clearly erroneous, *United States v. Jaramillo,* 891 F.2d 620, 621 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1791, 108 L.Ed.2d 792 (1990); *McCarty,* 862 F.2d at 148, and they are not clearly erroneous. The court concluded that "a reasonable police officer would have stopped [Rivera's] car to issue a citation or warning for the violation of § 12–503(c)" and that "a reasonable police officer would have stopped [Rivera's] car to investigate the cause of the erratic manner in which the car was being driven." It concluded correctly. Imbued in its conclusion is the court's objective determination that probable cause existed to believe that Rivera had violated Illinois law, that reasonable suspicion existed to believe that Rivera was intoxicated or fatigued, and that the trooper was empowered by Illinois law to stop Rivera to investigate his erratic

driving and issue him a citation or warning for his violation of Illinois law. We believe those determinations are correct; thus, the initial seizure of Rivera's car was reasonable and objectively justifiable. Rivera's "pretext" argument, therefore, cannot survive.[1]

■ The second issue raised by Rivera is whether the cocaine found in his car should have been suppressed as evidence because the trooper's investigative detention after the initial stop greatly exceeded its legitimate duration and scope. The constitution restricts the duration of a seizure to the duration necessary to fulfill the seizure's purpose. *See, e.g., Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) (plurality) (White, J., concurring) ("[A]n investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of a stop."). Moreover, the constitution restricts the scope of the seizure to that which is necessary to fulfill the seizure's purpose. *See, e.g., id.* ("[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."). We conclude that the duration and scope of the state trooper's seizure of Rivera and his passenger did not exceed constitutional limits.

The court below found that there were three potential offenses that needed investigation or citation: the material obstruction, Rivera's erratic driving, and his passenger's (later discovered) nonwearing of a seat belt. The court found that the trooper investigated these offenses, and at the same time engaged in limited discourse with Rivera and his passenger. It noted, however, that certain of the questions asked by the trooper seemed outside the narrow scope of investigating the traffic offenses. But some of these questions easily can be characterized as the product of casual conversation or light banter, consensual in nature. Other of these questions easily can be characterized, and, indeed, easily were characterized by the district court, as questions brought on by the trooper's reasonable suspicions, suspicions that were raised when Rivera and his passenger gave inconsistent answers in responding to the trooper's legitimate interrogation and when the trooper noticed a pervasive effluvium of alcohol surrounding the car and its passengers. The district court determined that under the circumstances the trooper's questions were not egregious enough to make the scope of the trooper's investigation unconstitutional. We hold that determination is correct. The court also found that the trooper asked Rivera to accompany him to the squad car while he wrote Rivera a warning. But the court determined that the request was not unusual—the request makes sense; the trooper may have needed information from Rivera to write the warning—and it determined that nothing occurring in the squad car went beyond constitutional norms. We hold these determinations also are correct. The court found that the trooper then wrote the warning, gave Rivera the i.d.'s, and told Rivera "that was it," ending the seizure. On the basis of its findings, the court concluded that the seizure was within constitutional bounds, properly limited in duration and scope. We agree. The court's findings, it seems to us, are not clearly erroneous, and its conclusion cer-

---

1. Rivera makes much of the fact that the state trooper who had stopped him was a participant in the Illinois State Police's "Operation Valkyrie" and a member of a "Valkyrie team." Participants in Operation Valkyrie are trained to be aware of evidence of drug related offenses when investigating traffic violations; members of a "Valkyrie team" (who are assigned exclusively to routine traffic patrol) get the opportunity to put that awareness to use. Rivera would like this Court to believe that members of a Valkyrie team are trained and instructed to pull over motorists, especially Hispanic motorists like himself, simply so they can look for evidence of drug related offenses. The lower court found otherwise, however, and the facts more than prove the district court correct. Moreover, even if Rivera's allegation was true, it could not create the basis for an unconstitutional "pretextual" stop (although it would give rise to other problems). Under the circumstances known to the trooper probable cause to arrest and reasonable suspicion to investigate Rivera existed. Under our objective pretext test, that the state trooper's motive in stopping Rivera was actually to search for drugs is irrelevant. *See McCarty, supra*, 862 F.2d at 148.

tainly is correct. The duration and scope of the seizure did not violate the fourth amendment.

 The last issue raised by Rivera is whether the cocaine found in his car should have been suppressed as evidence because Rivera's consent to the search of his car was not voluntarily given; rather, it was coerced from him while he was in the illegal custody of the state trooper. "The determination of whether [a] consent was free and voluntary must be made with reference to the totality of the circumstances." *United States v. Morgan*, 725 F.2d 56, 58 (7th Cir.1984). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). We conclude that under the totality of the circumstances Rivera was not in custody at the time he gave his consent, nor was his consent the product of coercion. It was the product of a free and voluntary will; consequently, the search following it did not offend the constitution.

If one adopted Rivera's interpretation of the facts, this could be a tough question. One would have to scrutinize closely whether Rivera was in custody because he was in the squad car, and whether being in the squad car somehow gave rise to a coercive atmosphere that led Rivera to acquiesce unwillingly in the search of his auto. But the lower court did not adopt Rivera's interpretation of the facts. The court found that Rivera was not in custody: He had all his identification, he was told that the investigation was over, he was free to leave at his pleasure and, indeed, was leaving when the trooper popped the question of consensual search. No restraint of Rivera's liberty was implicated. *See United States v. Black*, 675 F.2d 129, 133 (7th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). "[A] reasonable person," the court found, "would have believed he was free to go." *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (plurality) (Stewart, J., concur-

ring). At the point in time that Rivera was given his written warning, his identification, and his cue to leave, the stop and investigation relating to the traffic offenses was over. After that point, the encounter between the trooper and Rivera was consensual. The court also found that the atmosphere in the squad car was other than coercive. Rivera's response to the trooper's drug interdiction question was voluntarily offered, and, the court concluded, the search was consensual. A lower court's finding of voluntary consent is a finding of fact, *United States v. Borys*, 766 F.2d 304, 314 (7th Cir.1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 893 (1986). It must stand unless clearly erroneous, and there is nothing in the record to suggest it is erroneous at all.[2] Accordingly, the search of Rivera's car was not unconstitutional.

AFFIRMED.

---

2. The lower court also found that Rivera did not try to revoke his consent when he walked behind the trooper as the trooper searched his car.

Once again, there is nothing to suggest that the court's finding is erroneous.