**UNITED STATES of America,
Plaintiff,**

v.

**Jose LOPEZ–GUZMAN, Defendant.**

**No. 02–40133–01–SAC.**

United States District Court,
D. Kansas.

Feb. 27, 2003.

John J. Ambrosio, Kathleen A. Downey Ambrosio, John J. Ambrosio, Topeka, KS, Michael Ian Garey, Santa Ana, CA, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on defendant's motion to suppress evidence seized in a car search. Defendant contends that the initial stop of his vehicle was invalid, that the scope of the detention exceeded the bounds of the law, and that he did not validly consent to any search of his vehicle.

### FACTS

At approximately 7:50 a.m. on September 13, 2002, Sergeant J.D. Rule of the Kansas Highway Patrol was traveling westbound on I–70 when he saw a green Grand Cherokee Jeep heading eastbound. Trooper Rule testified that the Jeep was following another vehicle at a distance of approximately one car length at an estimated speed of seventy miles per hour. Believing that the Jeep was following the other vehicle too closely, Sergeant Rule turned through the median and followed defendant's vehicle for about one mile before stopping it.

Sergeant Rule then approached the vehicle on the passenger side, greeted the driver/defendant, explained that he had stopped him for following too closely, and asked for registration. Defendant produced a valid California driver's license and the requested vehicle registration.

Sergeant Rule then asked in English if it were defendant's car, and received a positive response. He then asked: "Where you headed? Donde va?" and learned that defendant was going to Atlanta, Georgia. Sergeant Rule then asked: "Donde vienes?" and defendant told him Riverside, California.

Knowing that I–70 was over 300 miles out of the way of a person traveling from Riverside, California to Atlanta, Georgia, Sergeant Rule asked defendant why he had chosen to travel through Kansas on I–70, but received no noted explanation. Sergeant Rule found this route of travel suspicious, based upon his experience and knowledge that drug haulers often attempt to avoid more stringent drug interdiction efforts on I–40 or other more direct routes, by traveling on I–70. Sergeant Rule also noted that although the vehicle was very clean, it had an "extremely strong" smell of air freshener. He found this suspicious because the vehicle had been registered just three weeks before the stop, and because the strength of the smell made him believe defendant was "trying to cover something up." Sergeant Rule additionally found the fact that there was no lien on the vehicle to some indication that defendant had paid cash for the recently purchased vehicle, a feature common to prior drug interdictions. He also noted that there were only two suitcases in the vehicle, and believed this to be "very little luggage" for two people on a long trip.

Sergeant Rule then asked in English if they had just bought the vehicle, received an affirmative response, and returned to his patrol car. Upon checking defendant's background, he learned that defendant's registration was proper but that a person with the same name had a 1998 arrest for carrying a concealed weapon. Dispatch asked Sergeant Rule to obtain defendant's social security number so that the prior arrest could be confirmed, and he approached defendant's vehicle to do so.

After receiving the requested information, Sergeant Rule returned to his patrol car, relayed the information to dispatch, then reapproached defendant's Jeep. Sergeant Rule returned defendant's documents to him and handed him a warning citation. He then told defendant "No dinero," explained that he was just issuing a warning, and told him "don't follow so close." He then stated, "O.K. All righ'. Y'all have a good trip. Adios." He then took one step away from the vehicle before turning and asking, "Can I ask you a couple questions?" Sergeant Rule testified that defendant nodded his head, consenting to this request. Sergeant Rule then placed his arms on the windowsill of the passenger window, which was down, and leaned his head into the vehicle. He testified that he did so to alleviate the traffic noise and better hear the occupants.

Sergeant Rule then asked in Spanish, "No drogas en el carro?" and he testified that defendant replied "No." Sergeant Rule then asked, "Puedro registro su carro?" then asks in English, "Can I search your car?" and repeats his original Spanish request. Sergeant Rule testified that defendant nodded his head in response to this request, indicating consent.

Sergeant Rule then asked defendant to step out of the vehicle and stand on the shoulder of the highway, pointing to an area in front of the vehicle. Instead of exiting the vehicle, however, defendant put the vehicle in gear and began to move it forward. Sergeant Rule then stated: "No, No, you, you step, you." Defendant then immediately stopped the vehicle, stating, "Oh, me?" and exited it. Sergeant Rule removed the passenger from the vehicle, asked in English if he could pat down the defendant, and did so, without visible ob-

jection. He then directed defendant and his passenger to the side of the road and searched the Jeep. Defendant made no objection to the search during the search. In the back of the vehicle Sergeant Rule discovered a compartment containing cocaine, then arrested the defendant.

## INITIAL STOP

■ Defendant first contends that the initial stop of his vehicle was illegal. This contention is apparently based upon defendant's assertion that a reasonable trooper would not have believed that defendant's vehicle was following another vehicle too closely.

A traffic stop is a seizure within the meaning of the Fourth Amendment. *United States v. Zubia–Melendez,* 263 F.3d 1155, 1160 (10th Cir.2001). For the stop to be constitutionally reasonable, the officer must have either " '(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.' " *Id.* (quoting *United States v. Ozbirn,* 189 F.3d 1194, 1197 (10th Cir. 1999)). The constitutional reasonableness of a traffic stop does not depend on the officer's actual motive in conducting the stop. *Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

K.S.A. § 8–1523, captioned "Following another vehicle too closely," provides:

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

The testimony of Sergeant Rule regarding this issue was both credible and uncontradicted. He testified that he was aware of this law at the time of the stop, and alternatively uses two general guidelines to determine whether a vehicle is following too closely: 1) the following vehicle should be one car length away for every 10 m.p.h. of speed it is traveling, *e.g.,* 7 car lengths separating two vehicles traveling 70 m.p.h.; or 2) the following vehicle should pass a fixed object two seconds or more after the first vehicle passes that same object. His report indicates that defendant was following another vehicle at a distance of one car length at a speed of seventy miles per hour for over one mile. The video tape confirms that when Sergeant Rule initially approached defendant's vehicle, he stated he was "following that trailer way too close." The facts thus show a reasonable articulable suspicion that the defendant violated a Kansas traffic law.

Defendant also mentions in a footnote that "there are some factors in this case suggesting an improper racial profiling as a cause of the stop herein . . . but it should be unnecessary to resolve these issues, in view of the other issues raised herein." (Dk.14, p. 7, n. 1.) Defendant makes no other mention of this issue.

The Supreme Court in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), recognized "that the Constitution [Equal Protection Clause] prohibits selective enforcement of the law based considerations such as race." 517 U.S. at 813, 116 S.Ct. 1769. Defendant points to no evidence indicating that Sergeant Rule's decision to stop the vehicle for following too closely was based on racial considerations, rather than a traffic violation. Because no evidence supports defendant's suggestion that he was a target of racial profiling, this claim must fail. *See United States v. Saucedo,* 226 F.3d 782, 790 (6th Cir.2000), *cert. denied,* 531 U.S. 1102, 121 S.Ct. 838, 148 L.Ed.2d 718 (2001).

## SCOPE OF DETENTION

Defendant next asserts that both the length and scope of his detention exceeded the bounds of the law.

■ "Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir.1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Its scope must be carefully tailored to its underlying justification. *United States v. Gutierrez–Daniez*, 131 F.3d 939, 942 (10th Cir.1997), *cert. denied*, 523 U.S. 1035, 118 S.Ct. 1334, 140 L.Ed.2d 494 (1998); *United States v. Wood*, 106 F.3d 942, 945 (10th Cir.1997). Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay. *Patten*, 183 F.3d at 1193; *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997). A longer detention for additional questioning is permissible if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or the initial detention changes to a consensual encounter. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir.1998).

The Tenth Circuit has held in several cases that an officer conducting a routine traffic stop may inquire about "identity and travel plans," *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir.1989), and may request a driver's license and vehicle registration, run a computer check, and issue a citation. *See United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir.1993).

In *United States v. Holt*, 264 F.3d 1215, 1230 (10th Cir.2001) (referred to by the Tenth Circuit as *Holt II* ), the Tenth Circuit does state that an officer conducting a routine traffic stop may not ask questions unrelated to the purpose of the stop, even if the questioning does not extend the normal length of the stop, unless the officer has reasonable suspicion of illegal activity. As the Tenth Circuit has clarified, however, *Holt II* does not mean that officers cannot ask about travel plans, because such questions typically fall within the scope of a traffic stop:

> *Holt II* stands for the proposition that a "traffic stop based on probable cause must be judged by examining both the length of the detention and the manner in which it is carried out." *Holt II*, 264 F.3d at 1230. Mr. Williams does not argue that the questioning in this case increased the duration of the stop, but claims that questions related to his travel plans were beyond the scope of the stop and thus unreasonable even after *Holt II*. We are not persuaded, however, that in this case the questioning was outside the scope of the stop. When directly confronted with the issue, we have repeatedly held (as have other circuits) that questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop. (citations omitted). Though such questions do typically fall within the scope of a traffic stop, citizens' legitimate privacy interests are protected in that they are not legally obligated to answer such questions, nor can an officer compel an answer to these routine questions. *See $404,905.00*, 182 F.3d at 647 n. 2 (citing *Terry[ v. Ohio]*, 392 U.S. [1] at 34, 88 S.Ct. 1868, 20 L.Ed.2d 889 [1968] (White, J., concurring)).

*United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir.2001).

Defendant complains of Sergeant Rule's questions about defendant's social security number and choice to travel on I–70. These questions and the others shown by

the evidence were sufficiently related to travel or officer safety such that they were not unreasonable or beyond the scope of the stop. Nor does the court believe that the length of the stop was excessive.

■ Alternatively, the court finds that even if the scope of the stop exceeded that of a routine traffic stop, the length and questions were supported by a reasonable suspicion that illegal activity was occurring. Sergeant Rule's testimony regarding the significance of defendant's recent purchase of the vehicle, the presence and strength of the air freshener in light of the condition of the vehicle, defendant's travel from a source city to a destination city, defendant's choice to travel on a route several hundred miles out of the way, and the absence of the usual amount of luggage, coupled with Sergeant Rule's stated experience and training, give rise to a reasonable suspicion of illegal activity.

**CONSENT TO SEARCH**

■ Defendant next alleges challenges his consent to search the car. Defendant's challenge includes his assertions that because he failed to understand English, he did not give consent at all, but that even if he did voice consent, such consent is invalid, and that he attempted to leave the scene in his vehicle prior to the search but the trooper prevented him from so doing.

A warrantless search is "per se unreasonable" unless one of the specifically established exceptions, like consent, is present. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quotations omitted). Valid consent is that which is freely and voluntarily given. *Patten*, 183 F.3d at 1194 (citation omitted). Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041. A court makes this determination without presuming the consent was voluntary or involuntary. *United States v. Hernandez*, 93 F.3d 1493, 1500 (10th Cir.1996).

For this exception to apply, the government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *Soto*, 988 F.2d at 1557. The government does not discharge its burden "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The government first "must present 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.'" *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir.) (quoting *United States v. Angulo–Fernandez*, 53 F.3d 1177, 1180 (10th Cir.1995)), *cert. denied*, 525 U.S. 903, 119 S.Ct. 236, 142 L.Ed.2d 194 (1998). The government also must prove that the officers used no implied or express duress or coercion in obtaining the consent. *Id.* This determination is made upon considering the totality of the circumstances. *Schneckloth*, 412 U.S. at 225–27, 93 S.Ct. 2041.

The determination entails weighing several relevant factors. An officer's failure to advise that a person may refuse to consent is relevant, but it is only one factor and is not dispositive. *Pena*, 143 F.3d at 1367; *see Schneckloth*, 412 U.S. at 249, 93 S.Ct. 2041. Other relevant factors include the number of officers present, "'physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and physical and mental condition and capacity of the defendant within the totality of the circumstances.'" *Pena*, 143 F.3d at 1367 (quoting *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir.1994) (internal quotation omitted)); *United States v. Cabrera*, 117 F.Supp.2d 1152, 1157 (D.Kan.2000).

### Language barrier

Defendant first suggests that he did not understand English sufficiently to have consented to a search of his vehicle.

Sergeant Rule admitted to a language barrier during his conversations with defendant, but stated that he had learned enough Spanish to get him through a traffic stop, so used his limited Spanish when defendant appeared that he did not understand his English. Sergeant Rule additionally stated that defendant never indicated that he did not understand his Spanish, and responded appropriately to his requests. The video tape of the encounter confirms this testimony.

At the evidentiary hearing, defendant challenged Sergeant Rule's ability to communicate in Spanish. Specifically, defendant presented the testimony of a professional translator, Mr. Ralph Gomez, for the purpose of interpreting the Spanish phrase used by Sergeant Rule to request consent: "Puedro registro su carro?" Mr. Gomez testified that the word usage is confusing because the correct Spanish word for "can I" is "puedo" and not "puedro," but that he would have understood that the officer meant to ask, "can I."

Mr. Gomez further testified that the officer's use of the word "registro" for "search" was incorrect in two respects: 1) it is a noun instead of a verb; 2) it means register or registration, and not search. He would have understood from the question, "Puedro registro su carro?" that the officer was asking, "Can I register your car?" and not "Can I search your car?" He stated that "registrar" is not among the words used by Hispanics in this area to mean "search."

On cross examination, Mr. Gomez testified that he was unaware of the fact that the Larousse pocket dictionary, 1999 (Government's Exh. 2), which he admitted was a reliable source, lists "to search" as the first definition for the word "registrar." He stated that his understanding of that term was based upon his knowledge of usage in this area, as confirmed by a Spanish lesson book he used, which he admitted is not as complete as a dictionary. *See* Government's Exh. 3. He speculated that Hispanics in this area come from "all over," but admitted that he had no knowledge of where defendant was from. Defendant did not testify as to what he did or did not understand.

The court finds, based upon its review of the video tape of the stop, the testimony offered in evidence, and the exhibits received, that defendant understood Sergeant Rule's requests sufficiently to respond to them, and that he did respond to them. Defendant demonstrated adequate receptive language skills to consent to search, particularly given the fact that Sergeant Rule spoke Spanish at crucial times to assure defendant's understanding of what was being asked him.

The court does not find Mr. Gomez' testimony sufficient to serve as probative evidence as to what this defendant would reasonably have understood from the officer's Spanish request, using the term "registro." Further, Sergeant Rule repeated the question in English, clearly stating his request to "search" the vehicle. Defendant responded to several of Sergeant Rule's requests made in English, without any Spanish counterparts, such that the court is persuaded that defendant understood English sufficiently to consent to the officer's request to search the vehicle. The facts show that defendant understood English well enough to respond to the Officer's request, thus his consent is valid. *See United States v. Corral,* 899 F.2d 991, 994 (10th Cir.1990) (defendant with limited knowledge of English voluntarily consented because he understood the officer's

questions, answered questions in English and demonstrated an overall working knowledge of English); *United States v. Sanchez–Valderuten,* 11 F.3d 985, 990–91 (10th Cir.1993) (finding adequate "receptive English language skills" to consent to the search, despite defendant's difficulty in speaking English); *United States v. Marquez,* 2002 WL 1284290, *4 (D.Kan.2002); *United States v. Valadez-de la Cruz,* 2001 WL 1568356, *3 (D.Kan.2001) (finding consent voluntary where defendant demonstrated a sufficient understanding of the questions that were asked of him).

The officer's testimony that defendant nodded his head and thus gave consent is credible and uncontradicted. Accordingly, the court finds that defendant specifically and unequivocally consented to Sergeant Rule's search of his vehicle.

### Coercion

■ Defendant contends that because Sergeant Rule rested his arms on the windowsill and leaned his head into the vehicle while requesting consent to search, any consent was coerced, as defendant was not truly free to leave. The court finds that any degree of intrusion into the vehicle during this conversation was minimal, its length was short, and its purpose was legitimate. The cumulative effect of Sergeant Rule's acts was not so coercive as to vitiate valid consent. A reasonable person in defendant's situation would not have believed he had to stay and answer questions because of the officer's choice to lean on and minimally into the car.

■ Nor does the court believe that defendant's acts after he gave consent are sufficient to vitiate or revoke such consent, or to persuade the court that no consent was validly given. Defendant contends that when he moved his vehicle forward, he was attempting to drive away from the scene but was stopped by the trooper, who thus coerced his consent to the search.

*See United States v. Elliott,* 107 F.3d 810, 814 (10th Cir.1997) (noting "coercive show of authority.")

Although defendant moved his car slowly forward soon after Sergeant Rule removed his arms from the windowsill, the movement does not appear to evidence defiance of the officer's request that defendant move to the shoulder of the road, but rather compliance with what defendant thought Sergeant Rule's request to be. Although the movement of the vehicle does demonstrate defendant's misunderstanding of the officer's request, that misunderstanding was swiftly remedied by other communication. The court thus finds the fact of the vehicle's movement insufficient to negate defendant's consent or to indicate that it was not validly given.

The court similarly finds that the officer's statement immediately following the vehicle's movement, which stated, "No, no you, you step, you," to be merely a clarification regarding the desired method of executing the search, and did not relate to the essence of the consent itself. Issuing a command about where persons are to stand during the course of a vehicle search does not constitute a command compelling consent. When defendant realized his error, he stated, "Oh, me?", exited the vehicle, and fully complied with Sergeant Rule's remaining directions and requests without objection. The court is persuaded that defendant's consent to the search of his vehicle was freely given. Accordingly, defendant's challenge to the validity of his consent fails.

IT IS THEREFORE ORDERED that defendant's motion to suppress evidence (Dk.14) is denied.