In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-4270

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

FERNANDO FIGUEROA-ESPANA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CR 48—**David F. Hamilton**, *Judge.*

ARGUED SEPTEMBER 25, 2007—DECIDED DECEMBER 28, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and KANNE, *Circuit Judges*.

BAUER, *Circuit Judge*. After the district court denied his motion to suppress evidence, Fernando Figueroa-Espana pleaded guilty to one count of possession with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). He reserved the right to appeal the district court's denial of his motion to suppress and his sentence. For the following reasons, we affirm.

**I. Background**

At 1:20 p.m. on March 7, 2006, Indiana State Trooper Dennis Wade observed a Nissan pickup truck tailgating another vehicle on Interstate 65 near Indianapolis, Indiana. Trooper Wade pulled over the truck, approached the driver, Figueroa-Espana, and told him that he was driving too close to the vehicle in front of him. Figueroa-Espana indicated that he did not speak English. Trooper Wade asked, in a mixture of English and Spanish, for Figueroa-Espana's driver's license. Figueroa-Espana produced a document which Trooper Wade thought to be an international driver's license, but was actually a voter registration card. Trooper Wade asked, again mixing English and Spanish, if Figueroa-Espana had a United States driver's license. Figueroa-Espana responded that he did not. Trooper Wade then asked for the "rejistro," which he understood to mean "registration." Figueroa-Espana produced an expired insurance document in the name of another individual.

At this point, Trooper Wade was joined by Trooper Dean Wildauer. Trooper Wade explained to Trooper Wildauer the language difficulties with Figueroa-Espana, and suggested that Trooper Wildauer, whose Spanish was stronger, might have more luck. Trooper Wildauer approached the truck and asked Figueroa-Espana about the ownership of the vehicle. Figueroa-Espana initially stated that he owned the truck. When Trooper Wildauer pointed out that the insurance document indicated that he was not the owner, Figueroa-Espana audibly sighed and, according to Trooper Wildauer, became nervous. Figueroa-Espana then said that the truck belonged to his friend, but he could not recall the friend's name. Figueroa-Espana later stated that the truck belonged to his boss. During the course of this conversation, Trooper Wildauer asked Figueroa-Espana to get out of the truck, and the conversation continued in front of Trooper Wade's cruiser.

Meanwhile, Trooper Wade returned to his cruiser to prepare a warning ticket and run the truck's license plates. While in the car, Trooper Wade turned on a video camera attached to his cruiser. The camera recorded video and audio of the remainder of the conversation.

Trooper Wildauer asked Figueroa-Espana about his immigration status and his ultimate destination. Figueroa-Espana said that he had been in the United States for three years, and that he was in the country illegally. He said that he was headed to Indianapolis for a job, but he could not give a specific address. He stated that the job involved laying asphalt, but Trooper Wildauer noted that Figueroa-Espana did not appear to be traveling with tools or clothes that would suggest this type of work. During the questioning, Trooper Wildauer observed Figueroa-Espana becoming increasingly nervous, hesitating before answering questions and uttering multiple audible sighs.

Trooper Wade then left his cruiser, issued Figueroa-Espana a warning ticket, and told him he was "free to go." As Figueroa-Espana walked back to his truck, Troopers Wade and Waldauer decided that they wanted more information. Trooper Wade honked the horn of his cruiser, which briefly activated the siren. Figueroa-Espana turned back, and Trooper Wildauer called out to him, in Spanish: "Friend, come here please, I have more questions, okay?" Trooper Wildauer then asked if Figueroa-Espana had any guns, drugs, or large sums of money in the truck, and Figueroa-Espana responded that he did not. Trooper Wildauer then asked if he could search the truck, and Figueroa-Espana said that he could. Trooper Wildauer informed Figueroa-Espana that he could refuse the search, saying in Spanish, "[y]ou don't have to." Figueroa-Espana acknowledged this, and allowed the search. During the search, the troopers discovered two electronically-

controlled hidden compartments in the truck which contained approximately ten kilograms of cocaine.

After being arrested, transported to a police station, and read his *Miranda* rights, Figueroa-Espana confessed to a bilingual Drug Enforcement Agent that he knowingly transported the drugs. On March 22, 2006, Figueroa-Espana was charged by indictment with possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii).

Figueroa-Espana filed a motion to suppress the drugs recovered from the search of the truck. On August 23, 2006, the district court held a hearing on the motion. The district court denied Figueroa-Espana's motion; shortly thereafter, Figueroa-Espana entered a conditional plea of guilty to the charge in the indictment. On November 21, 2006, the district court sentenced Figueroa-Espana to 176 months' imprisonment and 5 years' supervised release. This appeal followed.

## II.  Discussion

Figueroa-Espana argues that the district court (1) erred in denying his motion to suppress evidence uncovered after an unconstitutional search; and (2) improperly considered the fact that he made a motion to suppress in calculating his sentence. We address these issues in turn.

### A.  Motion to Suppress Evidence

Figueroa-Espana raises three challenges to the district court's denial of his motion to suppress. First, he contends that he was detained by the troopers in violation of his Fourth Amendment rights, and that the evidence obtained must be excluded. Second, he contests the finding that he did not have a protected Fourth Amendment

interest in the truck that would allow him to challenge the search. Finally, he argues that the court erred in holding that, even if he did have a protected Fourth Amendment interest, he consented to the search. This court reviews a district court's legal determinations made with respect to the suppression ruling *de novo* and reviews factual determinations for clear error. *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007).

## 1. The Detention of Figueroa-Espana

Figueroa-Espana argues that the encounter consisted of two separate and legally distinguishable stops, the second of which violated his Fourth Amendment rights. The first stop, according to Figueroa-Espana, began with the traffic stop and ended when Trooper Wade issued the warning ticket and said he was "free to go." The second stop began when Trooper Wade honked the horn which activated the siren, and Trooper Wildauer told Figueroa-Espana, in Spanish, that he had more questions.

Figueroa-Espana rightly does not challenge the constitutionality of the traffic stop. Officer Wade had probable cause to stop the truck when he observed that the truck was "more close[ ] than is reasonable and prudent" to the car before it, in violation of Ind. Code § 9-21-8-14. *See Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (finding that a police officer may stop a vehicle when he has "probable cause to believe that a traffic violation has occurred"). Rather, Figueroa-Espana contends that once the troopers completed the traffic stop and informed him he was free to leave, they had no reasonable basis to initiate a *second* stop which was neither consensual nor supported by reasonable suspicion of criminal conduct. Figueroa-Espana argues that, under *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), any evid-

ence uncovered from this improper second encounter should have been excluded as "fruit of the poisonous tree."

The district court found that what Figueroa-Espana labeled a "second stop" was actually a consensual encounter following the initial stop, and, therefore did not implicate any Fourth Amendment rights. In the alternative, the court found that the interaction was a brief investigatory stop, entirely justified by reasonable suspicion of criminal activity based on Figueroa-Espana's behavior and responses to the troopers' questions.

As a preliminary matter, we decline to adopt the analytical framework offered by Figueroa-Espana of his encounter with the Indiana troopers. The fact that the troopers sought further information from Figueroa-Espana after he was told he could leave does not render this second phase of questions a new seizure. *See United States v. Rivera*, 906 F.2d 319, 322-23 (7th Cir. 1990) (finding that an officer's request to search a car, after giving the motorist a written warning, returning his identification, and indicating that he was free to leave, was part of a consensual encounter and not a new seizure). Rather, the events following the issuance of the warning ticket are more appropriately analyzed as either a consensual encounter or an extension of the initial stop based on reasonable suspicion.

A consensual encounter between an individual and a law enforcement official does not trigger Fourth Amendment scrutiny. *United States v. Moore*, 375 F.3d 580, 584 (7th Cir. 2004). In determining whether a stop is consensual, relevant factors include whether the encounter took place in public, whether the suspect consented to speak to police, whether the officers told the suspect that he was not under arrest and free to leave, whether the suspect was moved to another area, the number of officers present and whether they displayed weapons or

physical force. *See United States v. Adamson*, 441 F.3d 513, 520 (7th Cir. 2006). The district court, in finding that the encounter was consensual, noted that Figueroa-Espana was not under arrest, that the officers never displayed their weapons or made threats of physical force, and that he had just been told he was free to leave. Figueroa-Espana offers little to disturb this finding, arguing that the short "whoop" of the siren and the tone of the troopers' questions demonstrate that the encounter was a seizure and not a consensual encounter.

In any event, even if the "whoop" of the siren and the subsequent questions constituted a detention, such a detention was part of an extension of the initial traffic stop entirely justified by reasonable suspicion of criminal activity. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). However, information lawfully obtained during that period may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation. *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005); *United States v. Muriel*, 418 F.3d 720, 725 (7th Cir. 2005). This court has emphasized that the length of detention following a traffic stop based on probable cause must be reasonable. *See Muriel*, 418 F.3d at 725; *United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005); *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc) ("What the Constitution requires is that the entire process remain reasonable.").

Under the totality of the circumstances, the troopers were wholly justified in prolonging the stop; Figueroa-Espana's statements and demeanor created reasonable suspicion of criminal conduct. During the initial traffic

stop, Figueroa-Espana changed his story as to who owned the truck, vacillating between himself, an unnamed friend, and his boss. He provided conflicting information regarding his destination. He failed to provide a valid driver's license or vehicle registration. He admitted that he was in the United States illegally. Both troopers testified that Figueroa-Espana appeared nervous during their questioning.

Figueroa-Espana argues that each of these independent factors has an innocent explanation, without reference to the possession of drugs. Nevertheless, even when innocent explanations exist for individual factors taken separately, reasonable suspicion may arise when the factors are considered together. *See United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005) ("[B]ehavior which is susceptible to an innocent explanation when isolated from its context may still give rise to reasonable suspicion when considered in light of all of the factors at play."); *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996) (finding that factors considered separately may have innocent explanations, but give rise to reasonable suspicion when viewed in combination).

In light all of the information available to the troopers which was lawfully obtained during the course of the initial traffic stop, it was not unreasonable for the troopers to suspect that Figueroa-Espana was engaging in criminal conduct. *See Martin*, 422 F.3d at 602. Nor was it unreasonable for the troopers to further detain Figueroa-Espana to investigate this suspicion. The extension of time after the issuance of the warning ticket was anything but unreasonable; indeed, Trooper Wildauer proceeded quite expeditiously, obtaining Figueroa-Espana's consent to search the truck within moments of asking the additional questions. As such, the activation of the siren and subsequent questions from Trooper Wildauer did not constitute an unlawful detention of Figueroa-Espana.

## 2. Protected Fourth Amendment Interest in the Truck

Figueroa-Espana further contends that the district court erred in finding that he lacked a protected Fourth Amendment interest in the truck. The district court held that because Figueroa-Espana was not the owner of the vehicle and could not identify the owner, he had no reasonable expectation of privacy in the vehicle and therefore could not challenge the legality of the search.[1]

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *United States v. Jackson*, 189 F.3d 502, 507 (7th Cir. 1999) (internal quotations omitted). We have recognized that a driver who does not own a vehicle may still challenge a search of the vehicle. *United States v. Garcia*, 897 F.2d 1413, 1418-19 (7th Cir. 1990). In order to determine whether a driver of a vehicle may challenge a search, we apply a two-pronged test, asking whether the defendant had a subjective and an objective right to privacy. *United States v. Haywood*, 324 F.3d 514, 515-16 (7th Cir. 2003); *United States v. Walker*, 237 F.3d 845, 849 (7th Cir. 2001). To satisfy the subjective portion of the test, a defendant must show that he "actually and subjectively" held an expectation of privacy. *Torres*, 32 F.3d at 230. An objective expectation is one that society recognizes as legitimate and reasonable.

---

[1] The district court, the government, and Figueroa-Espana address this issue as one of "standing" to contest the search. However, "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 87-88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)); *United States v. Brack*, 188 F.3d 748, 755 n. 2 (7th Cir. 1999).

*Haywood*, 324 F.3d at 416 (citing *Walker*, 237 F.3d at 849). The burden is on the defendant to establish that he has a protected Fourth Amendment interest in the truck. *Jackson,* 189 F.3d at 508 (citing *United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994)).

Figueroa-Espana fails both prongs of the test. He produced little evidence to suggest that he actually held an expectation of privacy in the truck. During the traffic stop, Figueroa-Espana could not affirmatively state how he came to be behind the wheel of the truck, reciting three contradictory stories. At the suppression hearing, Figueroa-Espana was given a chance to state definitively who owned the truck. Instead, he changed his story again, testifying that he did not know who actually owned the truck, and that he received the truck from "[a] person whose name I don't know." Without evidence suggesting that Figueroa-Espana was driving the truck with someone else's permission, he cannot establish that he had a subjective expectation of privacy in the vehicle. Nor can he establish an objective expectation of privacy. In addition to being an unauthorized driver, Figueroa-Espana failed to produce a valid driver's license to either trooper. He should not have been driving any vehicle, let alone a truck of dubious origins, and therefore his objective expectation of privacy in the truck was neither legitimate nor reasonable. *See Haywood*, 324 F.3d at 516 (finding that an unlicensed and unauthorized driver did not have an objective expectation of privacy that society recognizes as legitimate and reasonable). Accordingly, Figueroa-Espana lacks a protected Fourth Amendment interest that would allow him to challenge the search of the truck.

### 3.   Consent to Search the Truck

Assuming that Figueroa-Espana did have a protected Fourth Amendment interest, his challenge would be short-

lived, as the district court properly found that he consented to the search. The Fourth Amendment accommodates warrantless searches when law enforcement officials receive voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Sandoval-Vasquez*, 435 F.3d 739, 744 (7th Cir. 2006). The government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. *Sandoval-Vasquez*, 435 F.3d at 744. Whether consent is voluntary is a question of fact, dependent upon the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041; *Sandoval-Vasquez*, 435 F.3d at 744. We review a district court's finding that a defendant voluntarily consented to a search for clear error. *United States v. Santiago*, 428 F.3d 699, 704 (7th Cir. 2005). In reviewing the court's finding, we must recall that "a determination of voluntariness does not ride on the presence or absence of a single controlling factor." *United States v. Johnson*, 495 F.3d 536, 541 (7th Cir. 2007) (citation omitted). Among the factors to be considered are: (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent; (4) whether his consent was immediate, or was prompted by repeated requests by the authorities; (5) whether any physical coercion was used; and (6) whether the individual was in police custody when he gave his consent. *Santiago*, 428 F.3d at 704-05.

The government presented ample evidence to demonstrate that Figueroa-Espana freely and voluntarily consented to the search of his truck. The troopers did not coerce him, physically or otherwise, to agree to the search. His consent was immediate, prompted by a single question by Trooper Wildauer. Trooper Wildauer informed Figueroa-Espana that he was not required to allow the search of the truck, but Figueroa-Espana consented

anyway. Nothing in the record suggests that his age (forty-one) or intelligence rendered him unable to understand or comprehend the questions regarding consent. Considering the totality of the circumstances surrounding Figueroa-Espana's consent, we cannot say the district court clearly erred in finding that consent was voluntarily and freely given.

Figueroa-Espana focuses on the insufficiency of Trooper Wildauer's Spanish-speaking skills in seeking consent. The district court observed the videotape and concluded that though Officer Wildauer's Spanish was accented and flawed, Figueroa-Espana understood the questions and responded accordingly. Officer Wildauer testified that he could sufficiently communicate with Figueroa-Espana on the key issues, and the district court found this testimony credible. The district court almost entirely discredited Figueroa-Espana's testimony on this matter; Figueroa-Espana stated in an affidavit filed for the suppression hearing that "[f]rom the time of my stop until I was taken to the police station, the officers spoke to me only in English." Unfortunately for Figueroa-Espana, the video and audio recording of the encounter belied this statement. Determinations on the credibility of witnesses are the purview of the district court, *United States v. Fields*, 371 F.3d 910, 914 (7th Cir. 2004), and we see no reason to disturb the district court's findings here.

Figueroa-Espana finally contends that any consent given to the troopers was insufficient to "purge the taint" of what he argues was an illegal seizure of his person, *see Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997); we have already concluded that the activation of the siren and subsequent questions asked by Trooper Wildauer were lawful, therefore this principle does not apply. *See Sandoval-Vasquez*, 435 F.3d at 745.

**B. Sentencing**

Figueroa-Espana challenges his sentence, arguing that the district court based it, in part, on an impermissible factor. He contends that the court, in calculating his sentence, considered the fact that Figueroa-Espana filed a motion to suppress evidence, and that such consideration was in error.

Post-*Booker*, we generally review a sentence for reasonableness in light of the statutory sentencing factors in 18 U.S.C. § 3553(a). *United States v. Hollins*, 498 F.3d 622, 629 (7th Cir. 2007). We review legal questions *de novo*, including constitutional challenges to sentences. *Id.* (citations omitted); *United States v. Peters*, 462 F.3d 716, 717-18 (7th Cir. 2006). Figueroa-Espana cloaks his argument as a constitutional challenge, contending that the district court's impermissible consideration of the motion to suppress violated his Fourth, Fifth, and Sixth Amendment rights. The government, by contrast, analyzed this issue as a challenge to the reasonableness of the sentence, and not a constitutional challenge warranting *de novo* review. We will address Figueroa-Espana's argument as a constitutional challenge, as he indicates in his reply brief that he does not challenge the reasonableness of his sentence.

The district court sentenced Figueroa-Espana to 176 months' imprisonment and explained the basis of the sentence:

> The sentence is based on the defendant's criminal conduct, his illegal residence and entrance into the United States, his untruthful statements in his affidavit and in his court testimony during the suppression hearing, and also includes a minor adjustment for the fact that he chose to plead guilty.

Sent. Tr. at 142-43. The court specifically addressed the "untruthful statements" in the affidavit and at the hearing:

> Mr. Figueroa-Espana, in this kind of situation, it would be possible for you—it would have been possible for you to tell the truth what you were doing [sic], tell the truth and get a downward adjustment in the safety valve. If you had done that, you would be looking at a sentencing range on the order of 70 to 87 months, less than half the sentence I'm imposing in this case.

> Those provisions in the Sentencing Guidelines recognize that a person can make a mistake, but can then decide to do the right thing to make up for that mistake. When they do, there's a pretty good chance they will not get into trouble again. This is at least the premise of the sentencing policies.

> But you made a very different choice in this case. You lied to the police. You moved to suppress evidence. You lied about what happened then. You did so in your affidavit and in court. The result is that your sentence is several years above the mandatory minimum sentence, but that's based on the choices that you made.

Sent. Tr. at 146-47.

Figueroa-Espana asks us to infer from this record—specifically, from the statement, "[y]ou moved to suppress evidence"—that the district court enhanced the sentence because he filed a motion to suppress the evidence. He argues (without any supporting authority) that in so doing, the district court encroached upon Figueroa-Espana's (1) due process right to challenge the introduction of inadmissible evidence; (2) right to rely on advice of counsel in filing the motion to suppress; and (3) right to challenge Fourth Amendment violations.

To the extent that these arguments are legally cognizable, they all rest upon a single unsupported presupposition: that the district court considered the fact of filing a motion to suppress in calculating the sentence. Figueroa-Espana's use of a selective quotation does not avail his argument. The phrase "[y]ou moved to suppress evidence" must be examined in the context of the entire proceedings. The record shows that the district court based the sentence, *inter alia*, on several "untruthful statements" made by Figueroa-Espana. The court identified two sets of statements—first, that Figueroa-Espana lied to the police during the traffic stop, and second, that he lied to the district court in the motion to suppress and at the hearing on the motion—and then noted the consequences of making these statements. In this regard, the statement "[y]ou moved to suppress evidence" frames the context of the second set of untrue statements, and does not offer a separate basis for assessing Figueroa-Espana's sentence. At the suppression hearing and at sentencing, the district court repeatedly noted its displeasure at the fact that Figueroa-Espana openly lied on multiple occasions. These lies, and not any motions filed by Figueroa-Espana, led to his sentence.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Figueroa-Espana's conviction and sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-28-07