# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3968

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OSCAR O. MURIEL,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 04 CR 48—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED JULY 6, 2005—DECIDED AUGUST 11, 2005

———————

Before COFFEY, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Oscar Muriel challenges the denial
of his motion to suppress cocaine seized incident to a traffic
stop and statements made to a police officer during the stop.
He contends that the stop was not supported by probable
cause and, in any event, was unreasonable in scope and
duration. Because the arresting officer had probable cause
to believe a traffic violation had occurred and because the
officer did not unreasonably prolong the stop, we affirm the
judgment of the district court.

**I**

**BACKGROUND**

On February 4, 2004, Indianapolis police sergeant Paul McDonald executed a traffic stop that led to the arrest of Mr. Muriel, the driver, and John Ramirez, his passenger. Mr. Muriel later was charged with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). Before trial, he filed a motion to suppress the cocaine and statements he made to Sgt. McDonald during the stop. He contended, in relevant part, that there was no probable cause for the traffic stop and that Sgt. McDonald had detained him longer than was reasonably necessary to issue a traffic citation or to check for outstanding warrants.

At the suppression hearing, Sgt. McDonald testified that he was driving westbound on the interstate when he noticed Mr. Muriel's Jeep Cherokee tailgating another vehicle. The sergeant was driving in the left lane, and Mr. Muriel in the right; when Sgt. McDonald approached the Jeep, Mr. Muriel slowed down to about thirty miles per hour. Consequently, Sgt. McDonald had difficulty changing lanes to get behind Mr. Muriel's car and he had to brake abruptly. Sgt. McDonald then initiated a traffic stop for following too closely and for reckless driving. The stop commenced at 2:28 p.m. according to the squad car's video camera, which recorded the entire stop.

Sgt. McDonald testified that, as he approached Mr. Muriel's car, his suspicions were aroused by certain features, such as the Illinois license plates, three police support decals affixed to the windows, a teddy bear on the dashboard and an American flag on the front of the vehicle. In his experience, Sgt. McDonald testified, such items are used to divert attention from illicit activity. Sgt. McDonald

asked Mr. Muriel to sit in the squad car while he ran checks on Mr. Muriel's driver's license and registration. While Mr. Muriel was seated in the squad car, Sgt. McDonald asked him about his trip. Mr. Muriel stated that he was on his way back to Chicago from Columbus, Ohio, where he had been visiting friends for three days. Sgt. McDonald returned Mr. Muriel's license and registration. While awaiting the results of the computer checks, Sgt. McDonald asked Mr. Muriel to wait in the cruiser while he spoke with Ramirez. Sgt. McDonald then asked for Ramirez's identification and inquired about their trip. Ramirez replied that they were returning from Columbus, where they had gone for work related to their landscaping business; he stated that they had left Chicago the day before and stayed in Columbus for one night. Sgt. McDonald decided to check Ramirez for outstanding warrants and returned to the squad car. On his way back to the squad car, he called for backup because he was suspicious of the inconsistent stories. Once in the squad car, he again asked Mr. Muriel where the two had been and pointed out the discrepancies between his and Ramirez's version of events. Sgt. McDonald asked if there was any contraband in their vehicle, and Mr. Muriel said that there was none. The sergeant then asked for permission to search, and Mr. Muriel at 2:41 p.m. agreed. After finding two packages of cocaine under the rear seat, Sgt. McDonald arrested both men. The arrest occurred at 2:46 p.m.

The district court, after viewing the video evidence, characterized whether Mr. Muriel had been tailgating as a fairly close question. Nevertheless, the court credited Sgt. McDonald's testimony that the gap between Mr. Muriel's Jeep and the truck in front of him was closer than two seconds. It therefore concluded that the officer had probable cause to believe that the driver was following another vehicle more closely than was reasonable and prudent. The court also concluded that the officer had probable cause to believe that Mr. Muriel had acted recklessly in

violation of Indiana law by slowing to thirty miles per hour on the interstate. Given the existence of probable cause, the court concluded that the officer had the authority to stop the vehicle. Relying on *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc), the district court then held that the duration of the stop was reasonable. The court gave little weight to the suspicion allegedly raised by the Illinois license plates, police decals, flag and teddy bear, but reasoned that Mr. Muriel and Ramirez had aroused suspicion by giving conflicting accounts of their itinerary. The court concluded that, because the stop was reasonable up until the point when Mr. Muriel gave consent, there was no Fourth Amendment violation. It further concluded that Mr. Muriel's consent was voluntarily given. Therefore, the court denied the motion to suppress, and the next day a jury found Mr. Muriel guilty.

## II

## DISCUSSION

In reviewing the denial of a suppression motion, we review questions of law de novo and findings of fact for clear error.[1]

---

[1] Mr. Muriel was sentenced after this court's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), but before the Supreme Court resolved Mr. Booker's appeal, *United States v. Booker*, 125 S. Ct. 738 (2005). Before this court, Mr. Muriel only appeals the denial of his suppression motion. He does not challenge his sentence on *Booker* grounds and does not dispute the reasonableness of his sentence.

A court of appeals may notice plain error even though the error was not brought to the court's attention. Fed. R. Crim. P. 52(b); *see Silber v. United States*, 370 U.S. 717, 718 (1962) (per curiam); 3B

(continued...)

*See United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005).

---

[1] (...continued)
Charles Alan Wright et al., Federal Practice and Procedure § 856, at 490 (3d ed. 2004). We have established a limited remand to address *Booker* sentencing error, *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), and in *United States v. Murphy*, 406 F.3d 857 (7th Cir. 2005), we applied the limited remand when the parties had not challenged their sentences:

> Although Murphy has not directly challenged his sentence and Baker has limited her involvement on appeal to resisting the efforts of the government to reinstate her convictions, we think both, because they were sentenced under the old unconstitutional regime, should, in the interest of justice, get the benefit of the procedures we recently announced in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), if they so desire.

*Id.* at 862. We thus gave the defendants fourteen days in which to notify this court whether they wished a *Paladino* remand. *Id.*

In this case, there is no need to ask Mr. Muriel whether he desires a *Paladino* remand. The district court sentenced him to 63 months' imprisonment, the low end of the applicable Guidelines range for possessing 1.9 kg. of cocaine and three months more than the mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(B). In the alternative, the district court considered the nature of the crime and the defendant's characteristics and noted that it would sentence him to the same term even if the Guidelines were unconstitutional. *See* 18 U.S.C. § 3553(a). We thus know that the district court would retain the 63-month sentence, and there is no need for a *Paladino* remand. Turning to the reasonableness of the sentence, we cannot say that a sentence only three months higher than the statutory minimum, based upon the factors discussed by the district court, is unreasonable. Thus, there is no plain error for this court to notice.

**A.**

Mr. Muriel first submits that the stop was not supported by probable cause and contends that the purported traffic violations were a pretext for stopping a car occupied by two Hispanic males.[2] The Supreme Court has held that the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

The record before us supports the conclusion that Sgt. McDonald had probable cause to believe that a traffic offense had been committed. The Indiana Code prohibits following another vehicle "more closely than is reasonable and prudent." Ind. Code § 9-21-8-14. Sgt. McDonald testified that the "two-second rule" prescribed by the Indiana Bureau of Motor Vehicles' Driver Manual is often used as a measure of reasonableness. His use of the "two-second rule" as a guide for reasonableness comports with Indiana law; while the two-second "rule" may provide useful guidance, "[t]here is no rule, other than that relating to the exercise of reasonable care, which prescribes a distance that must be maintained between vehicles." *Whitaker v. State*, 778 N.E.2d 423, 427 (Ind. App. Ct. 2002) (quotation marks and citation omitted). The district court viewed the video evidence and stated that it was a close question whether Mr. Muriel was

---

[2]   We note that, although Mr. Muriel refers in his brief to the issue of whether "following too closely was merely a pretext for stopping a car with two Hispanic males," Appellant's Br. at 6, at oral argument his counsel agreed that the facts simply do not support a claim of racial profiling here.

following within two seconds behind the truck in front of him. However, we need only inquire whether the officer had probable cause to believe that a traffic violation occurred, *see Whren*, 517 U.S. at 819, not whether Mr. Muriel actually was tailgating. When the record is assessed in this context, we believe that it is clear that Sgt. McDonald's estimation of the following distance amounted to probable cause to believe that Mr. Muriel's vehicle was "more close[ ] than is reasonable and prudent." Ind. Code § 9-21-8-14.

In any event, Mr. Muriel's slowing to thirty miles per hour on an interstate highway, under the circumstances described here, provided probable cause to stop him for reckless driving. *See* Ind. Code § 9-21-8-26 (prohibiting stops or sudden decreases in speed without an appropriate signal); *id.* § 9-21-8-52(a)(1)(A), (B) (prohibiting driving at an unreasonably slow rate of speed so as to endanger the safety or property of others or block the proper flow of traffic). Mr. Muriel's insistence that his slowing down "is not necessarily reckless driving," Appellant's Br. at 8, ignores the applicable standard. Probable cause exists so long as the officer reasonably assesses the facts and concludes that a traffic violation occurred. *Cashman*, 216 F.3d at 587; *see also Whren*, 517 U.S. at 819. When a vehicle suddenly slows to thirty miles per hour on an interstate highway, thus forcing another vehicle to brake hard and to experience difficulty changing lanes, there is probable cause to believe that a traffic violation has been committed.

### B.

Mr. Muriel next contends that the scope and duration of the stop were unreasonable. He submits that Sgt. McDonald impermissibly asked questions unrelated to the purpose of the stop for the purpose of prolonging it beyond the point of reasonableness.

As we have explained earlier, the traffic stop was based on probable cause; the initial seizure was therefore legal. As the Supreme Court has reiterated recently, however, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 125 S. Ct. 834, 837 (2005). Thus, the Court continued, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* This court too has emphasized that the detention following a traffic stop based on probable cause must be reasonable. *See United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005); *Childs*, 277 F.3d at 954 ("What the Constitution requires is that the entire process remain reasonable."). Officers need not have reasonable suspicion to ask questions unrelated to the purpose of the traffic stop, but questions that prolong custody may affect the reasonableness of the detention.

In this case, the traffic stop resulted in full custodial arrests after eighteen minutes. The more appropriate focus, however, is the time that elapsed between the initial stop and Mr. Muriel's consent to search; consent renders a search reasonable under the Fourth Amendment unless given involuntarily, which Mr. Muriel does not allege. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). According to the record, Mr. Muriel was stopped at 2:28 p.m. and gave consent to search at 2:41 p.m. During that period, Sgt. McDonald had run license and warrant checks on Mr. Muriel, while asking him some questions, and then had left the squad car from approximately 2:34 p.m. to 2:38 p.m. to speak to Ramirez and collect his identification. Sgt. McDonald testified that he had entered Mr. Muriel's information into the computer and returned his documents

to him before leaving the squad car to speak to Ramirez while the checks were being run. When he returned to the squad car, the checks showed that Mr. Muriel had a valid driver's license and registration and no outstanding warrants. While he ran Ramirez's check (which also turned up nothing), Sgt. McDonald asked Mr. Muriel more questions before seeking consent to search.

Viewed in its entirety, Mr. Muriel's detention was not unreasonably prolonged by Sgt. McDonald's asking a number of routine questions while conducting the business of the traffic stop. An officer conducting a valid traffic stop can detain the occupants of the vehicle long enough to accomplish the purpose of the stop. *See Caballes*, 125 S. Ct. at 837. And, as part of the stop, police may ask the vehicle's occupants "a moderate number of questions" and request their identification. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Indeed, "[s]uch questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). Furthermore, the police may ask questions that do not concern the purpose of the stop and that are not supported by any other suspicion. *Childs*, 277 F.3d at 954 (citing *Ohio v. Robinette*, 519 U.S. 33 (1996)).

Mr. Muriel also seems to suggest that Sgt. McDonald's involvement of Ramirez in the stop bears on its reasonableness. However, passengers may be questioned without reasonable suspicion. *Childs*, 277 F.3d at 952; *see United States v. Moore*, 375 F.3d 580, 583 (7th Cir. 2004) ("[I]ncident to his status as a passenger of a vehicle involved in a traffic stop, Moore could be questioned by the officers without their questions being deemed a 'seizure' for Fourth Amendment purposes . . . ."). Passengers may also be ordered out of the vehicle "as a matter of course" during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997).

By the time Sgt. McDonald had completed his work on the traffic stop, he had, by virtue of the inconsistent stories received from the occupants, reasonable suspicion to inquire further. In any event, at that point, Mr. Muriel had given him permission to search the vehicle. The district court therefore correctly denied the motion to suppress.

## Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*