**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 19, 2006
Decided May 5, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Nos. 05-2878 & 05-3155

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeals from the United States District Court for the Southern District of Indiana, Terre Haute Division |
| *v.* | No. 04 CR 11 |
| EDWARD L. WILKIE and MICHAEL D. CLARK, *Defendants-Appellants*. | Larry J. McKinney, *Chief Judge*. |

**O R D E R**

Edward Wilkie and Michael Clark challenge the denial of their motion to suppress drugs seized during a traffic stop. Their sole argument is that the officers unreasonably prolonged the stop beyond its "limited purpose." We affirm.

I.

The facts are not here disputed. On June 17, 2004, Sam Sellers, an officer of the Greencastle, Indiana Police Department, and Heath Kerns, an officer of the nearby Roachdale Police Department, were patrolling on a special traffic enforcement detail on Interstate 70. Also in the car was Sellers's assigned K-9, Jasper. At 2:09 a.m. the officers stopped a Ford F-150 truck driven by Wilkie because his license plate was not properly illuminated as required by Ind. Code § 9-

19-6-4(e).  Clark was Wilkie's sole passenger.  A camera mounted on Sellers's dashboard recorded subsequent events although there is no audio.[1]

As the officers approached the truck they observed four suitcases in the open bed of the truck (a fifth was later found in the extended cab) and eight or nine tree-shaped air fresheners hanging in the cab, most of them on the rear-view mirror. Sellers said he noticed "Clark's breathing was labored and [his] carotid artery pulsating."  Wilkie gave Sellers the truck registration and part of a torn Pennsylvania driver's license.  In part to protect himself from passing traffic, Sellers ordered Wilkie to stand with him between their two vehicles while he collected information missing from the license that was needed to determine its validity.  While Wilkie gave Sellers the missing information, Kerns returned to the police cruiser to summon backup.  Wilkie told Sellers that he and Clark were driving home to New York from San Diego, where they had been visiting Clark's brother for three days.

Six minutes into the stop Sellers finished talking to Wilkie.  Rather than immediately calling dispatch to validate Wilkie's license, Sellers told Wilkie to wait by the cruiser and went to speak with Clark who was still trying to locate proof of insurance, which he never located.  On the video it appears that eight or nine more minutes passed before Sellers finished talking to Clark—their conversation was interrupted for a few minutes when Sellers left Clark to confer with Officer Simmons of the Putnam County Sheriff's Department, who had just arrived in response to Kerns's call.  Clark told Sellers that he and Wilkie had spent five days in San Diego, but did not mention visiting his brother; he said they stayed at a hotel.  The officers apparently spent another five minutes conferring before Sellers retrieved Jasper from his police cruiser and, eighteen to twenty minutes into the stop, ordered him to sniff around the truck.  Jasper almost immediately alerted at the back of the vehicle, and a search of the four suitcases in the bed of the truck and a fifth suitcase in the cab revealed 66 kilograms of marijuana.  At 2:31, just after the marijuana was discovered, Sellers called in Wilkie's license information for validation.[2]  Officers with a warrant later discovered three kilograms of cocaine in a false spare tire.

---

[1]The relevant portion of the video is obscured by condensation on the windshield.

[2]The government was unable to give the precise time of the call until after the suppression hearing, but submitted the dispatch run sheet before the district judge issued his decision.

Wilkie and Clark moved to suppress the drugs, arguing as relevant to this appeal that their detention was unreasonable in scope and duration. The district court found that "[u]pon initial approach and contact with the occupants of the truck, several intervening circumstances gave rise to a reasonable and articulable suspicion of criminal activity." Specifically, the court relied on: the defendants slowing below the speed limit, the eight or nine air fresheners, Clark's nervousness, the four suitcases in the truck's bed, and Wilkie's torn driver's license. The disparity between Wilkie's and Clark's account of their trip, the court further found, "added to the reasonable suspicion developed."

## II.

On appeal, Wilkie and Clark admit that their license plate was not illuminated and that this allowed Sellers to stop them. They also concede—as they must after *Ill. v. Caballes*, 543 U.S. 405 (2005)—that Sellers needed nothing more to deploy Jasper to sniff around their truck. But almost twenty minutes passed before Jasper indicated the presence of drugs and, they assert, much of that delay was unrelated to the stop's "limited purpose"—issuing a warning or citation for the traffic infraction. And because Sellers's observations during that time never yielded a reasonable suspicion of any crime other than the traffic infraction, they contend, the stop became unreasonably long in violation of the Fourth Amendment. The government cannot explain why Sellers waited instead of immediately deploying Jasper, but defends the district court's determination that reasonable suspicion justified the delay.

When reviewing the denial of a motion to suppress we review questions of law de novo and findings of fact for clear error. *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006). The premise of the parties' arguments is that *Terry v. Ohio*, 392 U.S. 1 (1968), governs police conduct during a traffic stop supported by probable cause to believe the vehicle's occupants have committed a traffic infraction. However, such stops are arrests, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Whren v. United States*, 517 U.S. 806, 809-10 (1996), and we have rejected the premise that *Terry* governs them, *United States v. Childs*, 277 F.3d 947, 952-54 (7th Cir. 2002) (en banc); *see also United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005). Though arresting officers may not *unreasonably* prolong a traffic stop with questions unrelated to the stop's purpose, "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *Childs*, 277 F.3d at 954.

Wilkie and Clark are partly to blame for the length of the stop. Because Wilkie's license was missing information, Sellers had to ask him additional questions to determine whether it was valid. And Clark spent several minutes unsuccessfully trying to locate proof of insurance. The two contend that they were

not required to carry proof of insurance because they were not from Indiana, and that the time Clark spent looking for the papers made the stop unreasonable. But Clark was free to tell the officers he did not have proof of insurance or could not locate it. *See Childs*, 277 F.3d at 954 ("all suspects . . . may protect themselves fully by declining to answer"). The delay was caused by Clark's search for the papers, not Sellers's request for them. The officers prolonged the stop in talking to Clark and conferring with one another, but the incremental delay to investigate possible drug trafficking was too small an inconvenience to make the lawful arrest unreasonably long. *See id.*; *United States v. Martin*, 422 F.3d 597, 601-02 (7th Cir. 2005); *United States v. Muriel*, 418 F.3d 720, 725 (7th Cir. 2005); *Carpenter*, 406 F.3d at 916-17. It was therefore unnecessary for the district court to decide whether circumstances beyond the traffic infraction justified the officers' conduct.

Even if the traffic infraction alone was insufficient to justify the length of the stop, however, the district court was right that the length of the stop was reasonable in light of the circumstances that developed. That a defendant "appeared nervous" is a subjective impression that we have held contributes nothing to the objective basis for suspecting criminal activity, *see United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005) (collecting cases), and this must remain true notwithstanding an officer's attempt to recast his subjective impressions in objective-sounding terms like "labored breathing" or "pulsating carotid artery." Likewise, that a person slows below the speed limit after passing police adds nothing to a stop's objective basis. *Id.* The district court should not have given these observations any weight.

Nevertheless other circumstances that arose before Sellers finished taking Wilkie's license information established a reasonable basis for suspecting that he and Clark were transporting drugs. Wilkie told Sellers they had driven cross-country from New York to San Diego for just a three-day visit. *See United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002) (giving weight to fact that claimant was "traveling from New York to San Diego, well known source cities for drugs"). For this brief trip the two defendants had five suitcases between them. Moreover, there were eight or nine air fresheners hanging in the cab. *See United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (smell of air freshener added to probable cause); *see also United States v. Fuse*, 391 F.3d 924, 929-30 (8th Cir. 2004) (smell of air freshener added to reasonable suspicion); *United States v. Foreman*, 369 F.3d 776, 784 (4th Cir. 2004) (several air fresheners hanging from rearview mirror added to reasonable suspicion). *United States v. West*, 219 F.3d 1171, 1178-79 (10th Cir. 2000) ("[t]he scent of air freshener is properly considered as a factor in the probable cause analysis"). These objective facts made it reasonable for Sellers to briefly detain Wilkie and Clark for questioning and, when their answers did not dispel his suspicions, to detain them a little longer to deploy Jasper.

But, Wilkie and Clark persist in arguing, there was nothing to consider suspicious because any disparity in their stories is attributable to the framing of Sellers's questions. The amount of luggage wasn't suspicious, they posit, because Sellers testified that he might not have found the same amount unusual if Wilkie and Clark were women. Last, no court has relied on the mere presence of air fresheners, they assert: it is the smell of air freshener that is probative of drug trafficking. But Sellers testified that he asked Wilkie and Clark identical questions and nothing in the record contradicts him. As to the amount of luggage, the reason Sellers found it suspicious is irrelevant; all that matters is whether it was unusual enough to be objectively probative of drug trafficking. *See Foreman*, 369 F.3d at 781. Finally, at least one circuit has held that the presence of air fresheners added to reasonable suspicion. *Foreman*, 369 F.3d at 784. In light of the other circumstances the air fresheners were surely suspicious here even though nobody testified (or was asked) about their scent.

### III.

We AFFIRM the district court's denial of the suppression motion because the traffic infraction alone justified the eighteen to twenty minute stop here. In any event, the district court was right that the stop was not too long in light of the circumstances that developed.