Filed 11/19/20  P. v. EscobarGodinez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071824 |
| v. | (Super.Ct.No. FVI17003477) |
| ANGEL JACOBO ESCOBARGODINEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Corey G. Lee, Judge.

Affirmed in part, reversed in part, and remanded with directions.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General,

Julie L. Garland, Senior Assistant Attorney General, and Robin Urbanski and Mary Katherine

Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

During a routine traffic stop, the police found roughly four pounds of

methamphetamine in a false compartment in a car that defendant Angel Jacobo

EscobarGodinez was driving.  Defense counsel later argued that the evidence did not rule

1

out the possibility that defendant stole the car, unaware of either the false compartment or the methamphetamine.

In a jury trial, defendant was found guilty of one count of transportation of a controlled substance (Health and Saf. Code, § 11379, subd. (a)), with a weight enhancement (one kilogram or more) (Health and Saf. Code, § 11370.4, subd. (b)(1)), and one count of using a false compartment with the intent to transport a controlled substance (Health and Saf. Code, § 11366.8, subd. (a)).  He was sentenced to a total of two years, to be served in county jail, followed by three years of mandatory supervision, along with the usual fines, fees, and ancillary orders.

Defendant now contends that:

(1)  The trial court erred by denying defendant's motion to suppress the methamphetamine.

(2)  Defense counsel rendered ineffective assistance by filing a motion for new trial that was based on juror misconduct, yet failing to support it with sworn declarations from the jurors.

(3)  The trial court erred by failing to consider striking the weight enhancement.

(4)  The trial court violated Penal Code section 654 by imposing separate and unstayed sentences on both counts.

(5)  The trial court erred by imposing fines and fees without determining whether defendant had the ability to pay them.

The People concede that the trial court violated Penal Code section 654. They further concede that a remand is required to allow the trial court to consider striking the weight enhancement. As we must remand in any event, we leave it up to the trial court to address defendant's contention that it must consider his ability to pay any fines or fees imposed.

Otherwise, we find no error. Hence, we will affirm the conviction but remand for resentencing.

I

MOTION TO SUPPRESS

Defendant contends that the trial court erred by denying his motion to suppress the methamphetamine.

A.    *Additional Factual Background*.

The evidence introduced at the hearing on the motion to suppress showed the following.

On December 20, 2017, around 10:15 a.m., San Bernardino County Sheriff's Deputy Michael Chavez and his narcotic detection dog Arrows were on the northbound I-15 freeway in Newberry Springs. Deputy Chavez noticed an SUV, with Nevada license plates, tailgating another vehicle; one of its brake lights was not working. He therefore stopped it.

Defendant was the driver. Deputy Chavez asked him for his license, registration, and proof of insurance. He seemed nervous.

Deputy Chavez asked defendant some questions, including about his travel and his work. Defendant said he lived in Las Vegas and did plumbing, drywall, and stereo work; he had come to Victorville to find work, but he had not been able to find any, so he was going back home.

Defendant gave Deputy Chavez the registration, which was in a different name. It had been renewed earlier that month. Defendant explained that he had purchased the car two months earlier, and he was making payments to the registered owner.

Deputy Chavez went back to his patrol car and did a records check. Meanwhile, defendant kept looking back at him and "reaching around" in his car. In Deputy Chavez's opinion, this not only suggested that defendant was "trying to hide something in the car" but also "present[ed] an officer safety issue."

Deputy Chavez asked defendant if there was anything illegal in the car and if anyone else had been driving it; defendant said no to both questions. Then, Deputy Chavez testified, "I asked him if I could search the entire car, and he said yes." Deputy Chavez had defendant get out and stand in the dirt, off the shoulder.

During his search, Deputy Chavez saw an empty construction belt and an empty tool box, but he did not find any tools, such as a putty knife or a ladder, that would be needed for drywalling.

Deputy Chavez noticed aftermarket spot welds on the rear seat. He pushed down on the seat cushion and could feel something hard underneath. He then went around to the back of the car, pulled up the fabric on the back of the seat, and saw a house door

4

hinge that had been welded onto the sheet metal. When he "peel[ed] back" the hinge, he could see electrical wires running under the seat. He pried back a piece of the sheet metal and could see plastic-wrapped objects inside the seat.

Deputy Chavez had his dog Arrows sniff the car. Arrows alerted to the rear seat. Deputy Chavez then used a pry tool to open up the seat. In it, he found four packages of what appeared to be drugs.

Between the initial stop and the records check, about five or ten minutes elapsed. The records check took "[j]ust a few moments, probably no more than 5 minutes." The search itself took "[a]bout 5 minutes."

B.     *Additional Procedural Background.*

Defendant filed a motion to suppress. He argued only that the search had been carried out without a warrant, and therefore the prosecution had the burden of showing that it was constitutional.

In their opposition, the prosecution argued that (1) Deputy Chavez had reasonable suspicion for the traffic stop, (2) the stop was not unduly prolonged, and (3) defendant consented to the search.

After an evidentiary hearing, the trial court denied the motion. It ruled that there was reasonable suspicion for the stop. It also ruled that defendant consented to the search. Finally, it ruled that the length of the detention was not unreasonable.

C.  *Discussion.*

"'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.  [Citation.]  We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'  [Citation.]"  (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

1.  *The length of the detention.*

Defendant argues that the search unduly prolonged the duration of the traffic stop.

As defendant does not dispute, there was probable cause for the stop, because he was seen breaking traffic laws.  A traffic stop is justified if it is based on at least reasonable suspicion that the driver has violated the Vehicle Code or some other law.  (*Whren v. United States* (1996) 517 U.S. 806, 810-816.)

A traffic stop, however, "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  (*Florida v. Royer* (1983) 460 U.S. 491, 500 [plur. opn. of White, J.].)  "'[I]nvestigative activities beyond the original purpose of a traffic stop, including warrant checks, are permissible as long as they do not prolong the stop beyond the time it would otherwise take.  [Citations.]'"  (*People v. Gallardo* (2005) 130 Cal.App.4th 234, 238.)

Defendant does not claim that Deputy Chavez unduly prolonged the stop by asking questions or by running a records check.  He argues only that the stop was unduly prolonged because Deputy Chavez conducted the search.

6

By consenting to the search, however, defendant also consented to prolong the detention beyond any time limits that might otherwise apply. "'When a motorist gives consent to search his vehicle, he necessarily consents to an extension of the traffic stop while the search is conducted.' [Citation.]" (*United States v. Leon* (8th Cir. 2019) 924 F.3d 1021, 1025-1026, cert. den. ___ U.S. ___ [140 S.Ct. 672]; accord, *United States. v. Hernandez* (11th Cir. 2005) 418 F.3d 1206, 1209-1210 ["Once Defendant gave her consent, the clock re-started for purposes of evaluating the reasonableness of the duration of the intrusion."], cert. den. (2006) 549 U.S. 889; *United States v. Machuca-Barrera* (5th Cir. 2001) 261 F.3d 425, 435 ["After Machuca-Barrera consented to a search, Agent Holt needed no justification to prolong the encounter."].)

Defendant relies on *Rodriguez v. United States* (2015) 575 U.S. 348, but the circumstances there were significantly different. In *Rodriguez*, the police had otherwise completed a traffic stop of the defendant when they asked for his consent to a dog sniff. (*Id*. at pp. 351-352.) He expressly refused to consent; an officer nevertheless ordered him out of his car and compelled him to wait until a second officer arrived with a dog and conducted the sniff. (*Id*. at p. 352.) In other words, the police prolonged the detention without the defendant's consent.

The appropriate focus is on the time that elapsed between the initial stop and the consent to search. (*United States v. Muriel* (7th Cir. 2005) 418 F.3d 720, 725.) If Deputy Chavez had *already* unduly prolonged the stop *before* he asked for consent to search, that

consent would be the product of an unlawful detention. (*United States v. Jones* (5th Cir. 2000) 234 F.3d 234, 242-243.) But that is not what defendant is claiming.

Defendant asserts that "by the time that Chavez asked appellant whether he could search his vehicle, the ordinary inquiries incident to the traffic stop . . . were already complete." Merely asking for consent to search the car, however, did not significantly extend the detention. And once defendant consented, he could not complain about extending it further, for a reasonable time, for the purpose of the search.

Defendant does not contend that the search itself took an unduly long time. Five minutes to search a car is actually quite brisk. Once Deputy Chavez saw plastic-wrapped packages concealed in the rear seat, he had the necessary reasonable suspicion to detain defendant for as long as it took to conduct a dog sniff.

### 2. *The scope of the consent.*

Defendant also argues that the search exceeded the scope of his consent.

"A consensual search may not exceed the scope of the consent given. [Citations.]" (*People v. Superior Court* (*Chapman*) (2012) 204 Cal.App.4th 1004, 1012.) "'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?' [Citation.] 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances. [Citation.] Unless clearly erroneous,

8

we uphold the trial court's determination.' [Citations.]" (*People v. Tully* (2012) 54 Cal.4th 952, 983-984.)

Deputy Chavez testified, "I asked him if I could search the entire car, and he said yes." "Authorization to search an automobile must be deemed to include the automobile in its entirety, unless the defendant expressly states otherwise." (*People v. Williams* (1980) 114 Cal.App.3d 67, 74.)

As defendant notes, "[t]he scope of a search is generally defined by its expressed object. [Citation.]" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251.) He argues that, because Deputy Chavez did not specifically say he was looking for drugs, it was unreasonable for him to look into a compartment where drugs might be found.

This reasoning is upside down and backwards. "'The scope of a consensual search may be limited by the expressed object of the search' . . . When 'an officer *does not* express the object of the search,' however, 'the searched party, who knows the contents of the vehicle, has the responsibility explicitly to limit the scope of the search.'" (*United States v. Cotton* (5th Cir. 2013) 722 F.3d 271, 276, fns. omitted.) "Consent to search a car means to search the entire car and whatever is in it, unless such consent is otherwise restricted. [Citation.]" (*United States v. Deases* (10th Cir. 1990) 918 F.2d 118, 122, cert. den. (1991) 501 U.S. 1233.) Precisely because Deputy Chavez did not specify what he was looking for, the scope of the consent was at its maximum extent.

As a general rule, consent to search a vehicle "authorize[s] a search of all compartments in the automobile and of any containers found within those

9

compartments." (*People v. Williams*, *supra*, 114 Cal.App.3d at p. 73.) "It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers. If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way." (*United States v. Snow* (2d Cir. 1995) 44 F.3d 133, 135.)

For example, *People v. Crenshaw* (1992) 9 Cal.App.4th 1403 held that the defendant's consent to search his vehicle for drugs authorized the police to unscrew a door vent so as to search inside the door panel. (See *id*. at pp. 1407-1408.) It explained, in part: "[The defendant] knew the object of the officer's search, to wit, drugs. No reasonable person would expect narcotics to be scattered loosely throughout the vehicle. '[N]arcotics are generally carried in some form of a container.' [Citation.] Here, to an experienced officer the suspicious door panel was not an unlikely repository of narcotics. It reasonably could be expected to contain the object of the search. . . . [A] consent search, to be effective, must be thorough. [Citations.]" (*Id*. at p. 1415.)

In *United States v. Barragan* (8th Cir. 2004) 379 F.3d 524, after a driver consented to a search of his vehicle, an officer "forc[ed] up the glued-down carpet [and] found a piano hinge that ran the width of the vehicle between the wheel wells and appeared to secure the top of a false compartment." (*Id*. at p. 527.) "[His] initial attempts to open the compartment failed, as it was electronically activated. [He] then located the appropriate wires, and short-circuited the hydraulic system controlling the compartment to open it."

(*Id*. at p. 528.)  The appellate court upheld the search:  "When [the driver] gave consent to search the entire automobile for currency, drugs, and explosives, it was reasonable for the officer to believe that the owner's consent extended to a compartment that was an integral part of the vehicle.  [Citations.]"  (*Id*. at p. 530.)

Defendant relies on *People v. Cantor* (2007) 149 Cal.App.4th 961.  There, the defendant consented to a search of his car.  During the search, an officer found a record cleaning machine in the trunk.  He unscrewed the back panel of the machine and found cocaine inside.  (*Id*. at p. 964.)

The appellate court held that this exceeded the scope of the consent.  (*People v. Cantor*, *supra*, 149 Cal.App.4th at pp. 966-967.)  It relied on *State v. Wells* (Fla. 1989) 539 So.2d 464, which had "'decline[d] to establish a rule that effectively would countenance breaking open a locked or sealed container solely because the police have permission to be in the place where that container is located,' noting that '[t]his would render the very act of locking or sealing the container meaningless' and ignore the defendant's expectation of privacy.  [Citation.]"  (*People v. Cantor*, *supra*, at p. 967.)  "A piece of equipment that can only be opened with a screwdriver is analogous to a locked or sealed container.  Defendant manifested an expectation of privacy by placing the drugs inside the record cleaning machine and screwing it shut.  By unscrewing the back panel, the officer rendered that act pointless and violated defendant's privacy expectation."  (*Ibid*.)

11

The distinction between *Cantor*, on one hand, and *Crenshaw* and *Barragan*, on the other hand, should be obvious. *Cantor* involved a container that was carried in the car but separate from the car itself. *Crenshaw* and *Barragan*, on the other hand, involved a container that was part of the car. Objectively, consent to search an "entire car" extends to such a container. Or, as *Barragan* put it, it authorizes a search of "a compartment that [i]s an integral part of the vehicle." (*United States v. Barragan*, *supra*, 379 F.3d at p. 530.)

Admittedly, "an officer may not engage in search activity involving the destruction of property . . . ." (4 LaFave, Search & Seizure (6th ed.) § 8.1(c), p. 25, fns. omitted; see also *People v. Crenshaw*, *supra*, 9 Cal.App.4th at p. 1415.) However, the record does not establish that Deputy Chavez destroyed or damaged anything. Although he "peel[ed] back" the hinge and "pried back" the sheet metal, it would seem that what has been pried back can be pushed back into place again. (See *United States v. $304,980.00 in U.S. Currency* (7th Cir. 2013) 732 F.3d 812, 820 ["And while Officer Thebeau used a screwdriver to lift the plywood lid of Davis's secret compartment, there is no evidence that this caused any damage to the lid or to Davis's truck. Therefore, the search was within the scope of Davis's general, oral consent . . . ."].)

At a minimum, reasonable minds could draw conflicting inferences as to whether the car was damaged; hence, we must accept the trial court's implied finding that it was not. Finally, even assuming there was some damage, it "[wa]s de minimis in nature and

12

d[id] not place the search beyond the bounds of [defendant's] consent. [Citations.]" (*United States v. Siwek* (8th Cir. 2006) 453 F.3d 1079, 1085, and cases cited.)

Separately and alternatively, Deputy Chavez was entitled to exceed the scope of defendant's consent based on probable cause. "Under the automobile exception to the warrant requirement, an officer may search a vehicle if the officer has probable cause to believe that evidence of a crime will be found inside. [Citations.]" (*People v. Lopez* (2019) 8 Cal.5th 353, 372.) During the time when the search was still indisputably within the scope of defendant's consent, Deputy Chavez saw the spot welds and felt something hard in the seat cushion. He testified, "I've searched hundreds of cars before, and those welds were not there from the factory." "I've searched those particular vehicles before in the past, and that spot weld, and the way the cushion was is not normal." "Based on my training and experience, . . . that was an indicator for me to realize that there's something hidden in there." Thus, at that point, he had probable cause to open up the seat cushion and search it.

## II

## DEFENSE COUNSEL'S FAILURE TO OBTAIN JUROR DECLARATIONS

## IN SUPPORT OF DEFENDANT'S CLAIM OF JUROR MISCONDUCT

Defendant contends that his counsel rendered ineffective assistance by filing a motion for new trial that was based on juror misconduct, yet failing to support it with sworn declarations from the jurors.

A.      *Additional Factual and Procedural Background.*

Defendant filed a motion for new trial, based on jury misconduct.[1]  In support of

the motion, defense counsel filed his own declaration.  He attached two unsworn

statements by a defense investigator.

According to the investigator, he had interviewed two of the jurors.  They both

said that they (along with a third juror, whose name they could not remember) did not

believe defendant knew the methamphetamine was in his car.  They understood the jury

instructions to require knowledge of the presence of the drugs.  However, "[t]he other

jurors" told them that such knowledge was not required, and that defendant was guilty

because he was in possession of the vehicle.  At that point, they agreed that he was guilty.

The trial court denied the motion, in part because it was based on hearsay.[2]

B.      *Discussion.*

"To make out a claim that counsel rendered constitutionally ineffective assistance,

'the defendant must first show counsel's performance was deficient, in that it fell below

an objective standard of reasonableness under prevailing professional norms.  Second, the

defendant must show resulting prejudice, i.e., a reasonable probability that, but for

---

[1]      The motion also sought, in the alternative, disclosure of the jurors' personal information.  Defendant does not contend that the trial court erred by denying this aspect of the motion, nor that his counsel rendered ineffective assistance in connection with it.

[2]      The trial court also denied the motion on the ground that it was based on evidence of the jurors' subjective thought processes, in violation of Evidence Code section 1150.  In this appeal, the People argue that, even assuming defense counsel's performance was deficient, the motion was properly denied on this alternative ground. We need not reach this argument.

counsel's deficient performance, the outcome of the proceeding would have been different.' [Citation.] To make out an ineffective assistance claim on the basis of the trial record, the defendant must show '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.' [Citation.]" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.)

We cannot say that there could be no satisfactory explanation for counsel's failure to introduce juror declarations. The two jurors may have refused to provide declarations. Or they may have recanted their statements to the investigator. Or they may have become unavailable. The investigator had contacted them in August 2018; at that time, he had their phone numbers, but not their addresses. It is not inconceivable that by the time defendant filed his motion for new trial, in November 2018, both phone numbers had changed. And, of course, the jurors may have become unavailable for any number of other reasons — death, illness, etc.

In response to this point, defendant argues that, if in fact defense counsel tried but failed to get declarations from the jurors, "he could not have in good faith brought the motion for a new trial in the first place. It would have been unethical for an attorney to pursue a motion that he knew was meritless . . . ." The motion may have been a hail Mary pass, but even if so, defendant was not prejudiced.

15

We therefore conclude that defendant has not shown any ineffective assistance that is cognizable on appeal.

## III

## FAILURE TO CONSIDER STRIKING THE WEIGHT ENHANCEMENT

Defendant contends that the trial court erred by failing to consider striking the weight enhancement.

A.     *Additional Factual and Procedural Background*.

On the weight enhancement, the trial court imposed a term of three years, to be served consecutively.  It commented, "I believe the three years for the amount of drugs involved, I believe that's mandatory consecutive, so that's three years."

B.     *Discussion*.

The People, while not precisely conceding error, do concede that a remand for resentencing is "appropriate."

We accept their concession.  The applicable weight enhancement, Health and Safety Code section 11370.4, subdivision (b)(1), provides for "an additional term of three years."  However, it does not provide that this term must be imposed consecutively.  (Cf. Health & Saf. Code, § 11370.2 (a)-(c) [prior conviction enhancements, providing for "a full, separate, and consecutive three-year term"].)  Moreover, a trial court has discretion to strike a weight enhancement, "if it determines that there are circumstances in mitigation of the additional punishment."  (Health & Saf. Code, §  11370.4, subd. (e).)

16

From the trial court's comment that the weight enhancement was "mandatory consecutive," it appear to have misunderstood the scope of its discretion. The People do not contend that defendant forfeited the error. They also do not contend that the trial court could not possibly have found circumstances in mitigation. "Because [defendant] was entitled to a sentencing decision made in the exercise of the 'informed discretion' of the court [citation], and the court in this case was mistaken as to the scope of its discretionary powers, a remand for resentencing is appropriate. [Citations.]" (*People v. Jones* (2007) 157 Cal.App.4th 1373, 1383.)

IV

PENAL CODE SECTION 654

Defendant contends that the trial court violated Penal Code section 654 by imposing separate and unstayed sentences on both counts. The People concede that the trial court erred.

We agree. In theory, one could commit the crime of "possess[ing], us[ing], or control[ling]" a false compartment with the intent to transport a controlled substance (Health and Saf. Code, § 11366.8, subd. (a)) without actually transporting the controlled substance. (Health and Saf. Code, § 11379, subd. (a).) Here, however, the evidence did not show that defendant possessed, used, or controlled the false compartment *other than* by transporting the methamphetamine. The same act violated both statutes. (*People v. Jones* (2012) 54 Cal.4th 350, 358 ["Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law."]; see also *People v. Bradford*

17

(1976) 17 Cal.3d 8, 22-23 ["where the evidence shows a possession [of a firearm] only in conjunction with the primary offense, then punishment for the illegal possession . . . has been held to be improper"].)

As we are already remanding for resentencing (see part III, *ante*), we will leave it to the trial court to correct the error.

V

FAILURE TO DETERMINE ABILITY TO PAY

Defendant contends that the trial court erred by imposing fines and fees without determining whether he had the ability to pay them.

A.     *Additional Factual and Procedural Background*.

The trial court imposed a $300 restitution fine (Pen. Code, § 1202.4),[3] a $300 mandatory supervision revocation restitution fine (Pen. Code, § 1202.45), a $80 court

---

[3]     The oral pronouncement of judgment imposed a $300 supervision revocation restitution fine but did not mention any restitution fine. The sentencing minute order, on the other hand, reflects a $900 restitution fine.

Defendant accepts the $900 figure. So do the People; they assert that "[t]he trial court imposed the minimum fine of $300 per felony criminal conviction, for a total of $900 in restitution fund fines." There are two problems with this reasoning. First, the minimum fine is $300 per case, not per conviction. (Pen. Code, § 1202.4, subd. (b)(1).) Second, defendant was convicted on two counts, not three.

The trial court was required to impose a restitution fine and a mandatory supervision revocation restitution fine, both in the same amount. (Pen. Code, §§ 1202.4, subd. (b), 1202.45, subd. (b).) It expressly imposed a $300 mandatory supervision revocation restitution fine. We therefore conclude that it intended to impose a $300 restitution fine and that the $900 figure in the minute order is a clerical error.

18

operations assessment fee (Pen. Code, § 1465.8), and a $60 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)). Defense counsel did not object.

B.     *Discussion*.

We need not decide this issue, because the matter must be remanded for resentencing in any event. (See part III, *ante*.) Defendant will have the opportunity to raise his present contention on remand.

Arguably, we could reach the issue for the guidance of the trial court. However, defendant's contention is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which held that due process prohibits the imposition of a criminal fine or fee in the absence of a hearing on the defendant's ability to pay. (*Id*. at pp. 1160, 1164-1172.) The validity of *Dueñas* is unsettled; it seems likely that it will be put to rest only by our Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) Any guidance we might give the trial court would be written in water.

If defendant is unhappy with the trial court's resolution of the issue on remand, he will have the option of appealing again.

VI

DISPOSITION

The judgment with respect to the conviction is affirmed. The judgment with respect to the sentence is reversed, and the trial court is directed to resentence defendant

19

in accordance with the views expressed in this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

                                            P. J.

We concur:

McKINSTER _____

                            J.

MILLER _____

                            J.